MONTPELIER PUBLIC LIBRARY, APPELLEE AND CROSS-APPELLANT,
*v.* WILLIAMS COUNTY BUDGET COMMISSION ET AL.; BRYAN
PUBLIC LIBRARY, APPELLANT AND CROSS-APPELLEE.

[Cite as *Montpelier Pub. Library v. Williams Cty.
Budget Comm.* (1991), 61 Ohio St.3d 390.]

(No. 90–1389—Submitted April 11, 1991—Decided August 14, 1991.)

*Albert E. Fowerbaugh,* for appellee and cross-appellant.

*Squire, Sanders & Dempsey, Stephen P. Grassbaugh* and *Kirk E. Grable,* for appellant and cross-appellee.

*Per Curiam.*

## I

Bryan's motion to dismiss Montpelier's appeal for 1988 asserts that the appeal was not timely made, as required by former R.C. 5705.37.

" ' * * * [W]here a statute confers the right of appeal, adherence to the conditions thereby imposed is essential to the enjoyment of the right conferred.' " *Queen City Valves, Inc. v. Peck* (1954), 161 Ohio St. 579, 581, 53 O.O. 430, 431, 120 N.E.2d 310, 312.

Here, the applicable appeal statute provided in pertinent part as follows:

"The taxing authority of any subdivision which is dissatisfied with any action of the budget commission may * * * appeal to the board of tax appeals within thirty days after the receipt by such subdivision of the official certificate or notice of such action of said commission. In like manner, * * * the board of trustees of any public library of a subdivision * * * may appeal to the board of tax appeals."

There is no disagreement regarding the language of the applicable statute or its application to this case. On the other hand, there is serious disagreement over when, and in what manner, appropriate notification from the budget commission was received by Montpelier. It is agreed that the notice of appeal to the BTA was filed November 13, 1987.

The BTA stated in its decision below: "It is Bryan's position that Montpelier was notified of the Budget Commission's action either by virtue of attending the August 27th meeting or by receipt of a Certificate of Estimated Resources at some point in September 1987.

"From our examination of the record, we conclude that there is sufficient evidence present therein to establish that appellant, Montpelier Public Library, was formally notified of the action of the Budget Commission more than 30 days prior to the filing date of its notice of appeal."

This is an express finding of fact; it is based upon a review of the record and does not appear to be unreasonable or unlawful.

The syllabus of *Budget Comm. of Brown Cty. v. Georgetown* (1986), 24 Ohio St.3d 33, 24 OBR 76, 492 N.E.2d 826, provides: "Pursuant to the express terms of R.C. 5705.37, the permissible time in which to perfect an appeal to the Board of Tax Appeals may be triggered by a subdivision's receipt of either the official certificate as set forth in R.C. 5705.37 or by receipt of notice as defined in R.C. 5747.51(J)."

The evidence before the BTA established that the official certificate was received sometime in September 1987; the absence of the specific date in the BTA decision or in the record is of no consequence. The BTA's finding that the notification was given more than thirty days before the filing of the notice of appeal establishes that the appeal was not timely filed. Accordingly, the decision of the BTA is affirmed and Montpelier's 1988 appeal is dismissed.

## II

### A

We turn now to a consideration of the merits. Bryan contends that the matter should be reversed and remanded to the BTA because it failed to specify the reasons for its decision, and that the BTA merely recited evidence

without assigning any reasons or any numbers which would be of value to this court in determining whether the finding of the BTA was reasonable and lawful.

R.C. 5705.32(B), as pertinent, provides:

"The commission shall fix the amount of the county library and local government support fund to be distributed to each board of public library trustees that has qualified * * * for participation in the proceeds of such fund. * * * The commission shall base the amount for distribution on the needs of such library for the construction of new library buildings, parts of buildings, improvements, operation, maintenance, or other expenses. * * * "

The BTA, in its *de novo* analysis of determination of needs, criticized the conclusion of the budget commission, asserting that it did not base its allocation on need, "but simply upon the general population of each library's *perceived* service area. * * * " (Emphasis *sic.*)

In *Cleveland Pub. Library v. Cuyahoga Cty. Budget Comm.* (1970), 23 Ohio St.2d 27, 30, 52 O.O.2d 83, 85–86, 261 N.E.2d 117, 119, we said:

"Upon appeal from the Board of Tax Appeals to this court, however, another full scale examination is *not* provided. At this stage of the proceedings, the issue is simply whether the decision of the board is unreasonable or unlawful. * * *

" 'What "the needs of" a library are is a question of fact upon which each library has the burden of proof. * * * Unless its determination of the fact of "the needs of" a particular library is unreasonable, this court will not disturb such determination.' " (Emphasis added.)

In *Cleveland Pub. Library, supra,* we further noted: " * * * There are no statutory restrictions on the authority of the board to determine, as a matter of *fact,* the extent of the 'actual needs' of a library, including needs for capital outlay." (Emphasis *sic.*) *Id.* at 32, 52 O.O.2d at 87, 261 N.E.2d at 121.

What are the factors to be utilized in determining actual need? The answer is suggested in *Cleveland Pub. Library v. Cuyahoga Cty. Budget Comm.* (1986), 28 Ohio St.3d 390, 393, 28 OBR 448, 450, 504 N.E.2d 421, 424:

" * * * The factual determination of what the ' * * * "needs" of the libraries are for various operations and projects * * * must be based upon actual "need" and not upon mere "justifiable expense." ' "

In *Cleveland Pub. Library (1986), supra,* competing libraries, as here, disagreed with regard to which factors should control the allocation. We concluded:

"The [BTA] * * * expressly found that its allocation 'must reflect the proportionate benefit received by those who may use the library facilities.' In

making that allocation, it would appear that the board considered the objective factors of population and library use as a measure, in part, of proportionate benefit received. Although, as stated, this court shall not establish guidelines or specific criteria for the determination of the libraries' needs, it would seem reasonable that the board consider population and area to be served, facilities and programs, as among the definite and quantifiable indicia of actual needs of the libraries. The board's establishing certain definite and quantifiable criteria * * * would seem to have a great deal of merit, and to be within the intent and purpose of R.C. 5705.32 to achieve fair distribution of library funds." *Id.* at 395, 28 OBR at 452–453, 504 N.E.2d at 425–426.

At oral argument Bryan suggested that the court, for the assistance of county budget commissions and library boards throughout the state, could set forth the objective criteria to be utilized in determining actual need. That same solicitation was made in *Cleveland Pub. Library (1986), supra,* and we rejected the invitation, stating, "[t]his court has no power to propound a specific formula for the determination of 'need' of the various libraries, nor can we mandate that the Board of Tax Appeals formulate a rigid rule for such determination. However, reflection upon the historic number of cases for appellate review concerning library board allocations would seem to suggest that it would not be unlawful for the Board of Tax Appeals to establish reasonably understandable criteria for the determination of need." *Id.* at 395, 28 OBR at 452, 504 N.E.2d at 425.

While we eschew the promulgation of detailed criteria of need, we did indicate in *Cleveland Pub. Library (1986), supra,* that the approved criteria utilized in that case were not exclusive and we agree that other criteria, as reasonably utilized by budget commissions or the BTA, would be acceptable, it being their function to determine initially the needs of particular libraries.

A review of the briefs indicates an accord by counsel that it is the function of the budget commission and/or the BTA to make the determination of need. Here, Bryan contends that the BTA simply recited evidence, failed to establish any numeric aspects for review and analysis and, in fact, merely identified the "needs criteria" without quantifying the same. This, Bryan contends, was unreasonable and unlawful.

A review of the record shows that the BTA did make findings of appropriate needs criteria. It noted, *inter alia,* the comparative number of existing facilities, books, circulation, and employees, and even included in its deliberations certain other factors propounded by Bryan's expert witness, such as relative population served and service area. It reviewed Bryan's Exhibits AA and BB dealing with the components of good library service plus the weight to

be attached to each category in order to quantify the proportionate benefits available to patrons of Bryan and of Montpelier on a comparative basis.

In addition, the BTA factored into its study the elements itemized above and determined that both libraries had identifiable needs and each presented sufficient evidence documenting those needs. In measuring the evidence presented, the BTA concluded that Montpelier's staffing, automation and reference collection needs necessitated commensurate funding, and while commenting favorably upon Bryan's plans to modernize branch facilities and services to continue automation, it made its allocation so as to address needs it considered "of an essential or urgent nature over those expressed needs that are easily justifiable but not of such an imperative or consequential nature * * *."

We conclude that the determination of need by the BTA to the extent discussed above is not unreasonable or unlawful.

## B

Nevertheless, the final issue relates to the propriety of the BTA in considering Bryan's expendable fiduciary funds in making its allocations. This requires an interpretation of R.C. 5705.32(B), which as pertinent reads:

" * * * The commission shall base the amount for distribution on the needs of such library * * *. In determining the needs of each library * * * and in calculating the amount to be distributed to any library * * * on the basis of its needs, the commission shall make no reduction in its allocation from the fund on account of additional revenues realized by a library from increased taxes or service charges voted by its electorate, from revenues received through federal or state grants, projects, or programs, or from grants from private sources."

Thus, the General Assembly stated that the following revenue sources could not result in reductions from allocations: (1) increased taxes, (2) service charges, (3) federal grants, projects or programs, (4) state grants, projects or programs, or (5) grants from private sources. Under the rule of *expressio unius est exclusio alterius*, the expression of items in a category excludes other items not mentioned. Since there is no mention of "interest earned" on such grants, taxes, service charges, projects, or programs, there is no legislative intent that such be included and it would be improper for this court to add to the words utilized by the General Assembly. *Wheeling Steel Co. v. Tax Commr.* (1970), 24 Ohio St.2d 24, 53 O.O.2d 13, 263 N.E.2d 249.

Bryan correctly observes that the record indicates the BTA did consider and was influenced by Bryan's unencumbered balance in its expendable fiduciary

funds. The testimony of Bryan's clerk-treasurer was that all amounts in these funds were non-tax revenues and were comprised of gifts, donations and bequests. This testimony was not refuted by Montpelier, yet there is no evidence to indicate whether these funds included only those protected by R.C. 5705.32, namely, voted taxes or service charges, and revenues from federal or state grants, projects or programs or from private sources.

Since it appears that this information was considered by the BTA, and was a factor in its determination of the allocations to Montpelier and to Bryan, this matter is reversed and remanded to the BTA for review of the record, for a determination of what part, if any, of the unencumbered balance in Bryan's expendable fiduciary funds consisted of interest on revenues deposited to that account, and, if necessary, for a redetermination of the appropriate allocations to Montpelier and to Bryan for 1987 and 1989.

*Decision affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.